**CONSTITUTIONAL LAW − FREEDOM OF RELIGION − FREE EXERCISE CLAUSE − HISTORIC PRESERVATION − APPLICABILITY OF HISTORIC ZONING ORDINANCE TO A CHURCH**


July 21, 1994


*The Honorable Eugene E. Johnson, Sr.*
*President*
*Town of Sykesville City Council*

You have requested our opinion whether a church located in a historic district is subject to the district's zoning regulations.

For the reasons stated below, we conclude as follows: A church in a historic district is subject to the procedural requirements of the local historic zoning ordinance − that is, the church must submit plans for exterior changes to its building to the local historic zoning commission. If the church does *not* assert that the components of the proposed change are grounded in religious belief or practice, then the church is subject to the substantive requirements of the ordinance, including the need for commission approval. If the church *does* reasonably assert that any components of the proposed change are grounded in religious belief or practice, then the commission may neither question the religious basis of the design choice nor disapprove it.


**I**

**Background**

A church located in the historic district of the Town of Sykesville is planning to build an addition onto its main building in order to accommodate its growing congregation. Normally, under Sykesville's historic zoning ordinance, a property owner who wishes to change the exterior of a building located in the historic district must seek the approval of the local historic zoning commission.

The church, however, asserts that the First Amendment to the United States Constitution, specifically the Free Exercise Clause, exempts it from the review and approval process of the historic district commission. Although we have not seen an explanation of the church's position, it has been suggested that the church's refusal to submit an application for an exterior alteration stems from its concern that the historic district commission will condition its approval on costly changes in the plan for the addition. Understandably, the church would rather spend the money on its religious functions instead.

## II

### Historic Zoning

The Town of Sykesville's historic zoning ordinance was enacted pursuant to the authority delegated to the municipality by the General Assembly under the State enabling law, Article 66B of the Maryland Code. Because Sykesville's authority to enact historic district zoning is limited to powers provided in Article 66B, §§8.01 through 8.15, Sykesville's ordinance is very similar in structure and purpose to the State Historic Zoning Act.

Sykesville's ordinance was enacted in July, 1984. The purposes of the ordinance include safeguarding the heritage of the town by preserving the districts and structures that reflect the cultural, social, economic, political, or architectural history of the town; strengthening the local economy; improving and stabilizing property values; fostering civic beauty; and preserving the historic district for the education, welfare, and pleasure of the town's citizens. Ordinance No. 187, §2. The ordinance requires the Mayor and City Council to appoint a historic zoning commission, which consists of residents of the town who have special knowledge in fields like history and architecture. Ordinance No. 187, §5.

The commission must approve all plans for the "construction, alteration, repair, reconstruction, moving or demolition of any Structure, including, without limitation, change of wall or roof surfacing materials," located within the historic district, if the changes would affect an exterior feature of the structure visible from an adjacent public way. Ordinance No. 187, §8. The commission may consider only the exterior of the structure and is prohibited from

considering any interior arrangements. Ordinance No. 187, §10. *See* Article 66B, §8.07 (a commission shall only consider exterior feature of a structure).[1] Whereas traditional zoning is primarily directed at the use of land and the density and location of the buildings, historic zoning is concerned only with preservation of the exterior appearance of buildings based on architectural and historic merit. *City of Annapolis v. Anne Arundel County*, 271 Md. 265, 291, 316 A.2d 807 (1974). To accomplish the primary purposes of historic zoning area, the exterior of the building must be "preserved against destruction or substantial impairment by *everyone*, whether a private citizen or a governmental body." 271 Md. at 291-92 (emphasis in original). While the exterior of a building is subject to the jurisdiction of the commission, the "use of the buildings is unaffected by historic commission decisions." 271 Md. at 291.

The Sykesville commission must consider the following factors when deciding whether to approve or disapprove an application:

> A. The historic or architectural value and significance of the structure and its relationship to the historic value of the surrounding area.
>
> B. The relationship of the exterior architectural feature of the structure to the remainder of the structure and to surrounding area.
>
> C. The general compatibility of the exterior design, arrangement, texture and materials proposed to be used.
>
> D. Any other factors, including aesthetic factors, which the Commission deems to be pertinent.

---

[1] Because of the limited scope of the State enabling legislation and the implementing ordinance, we need not consider the Free Exercise Clause implications of a historic district ordinance that purported to restrict alteration of the *interior* of a house of worship. *See Society of Jesus v. Boston Landmarks Comm'n*, 564 N.E.2d 571 (Mass. 1990) (designation of church interior as historic landmark violates freedom of religion provision of Massachusetts Declaration of Rights).

Ordinance No. 187, §9. Only the above factors can be considered by the commission when disapproving an application. Ordinance No. 187, §10. When reviewing applications, the commission is to be strict in its judgment of plans for structures that have historic and architectural value and lenient in its judgment of structures that have little historic value. Ordinance No. 187, §11.[2]

Any person, firm, or corporation that violates the ordinance is guilty of a misdemeanor and subject to a fine not to exceed $500. Ordinance No. 187, §17. Every day that a violation occurs is to be considered a separate offense. *Id*.

## III

### Free Exercise of Religion

#### A.    *Introduction*

The First Amendment provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." The Fourteenth Amendment makes the First Amendment, including the portion commonly referred to as the Free Exercise Clause, binding on the states. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Article 36 of the Maryland Declaration of Rights also provides a lengthier guarantee of "religious liberty."[3]

The Free Exercise Clause embraces two concepts, "the freedom to believe and the freedom to act." *United States v. Ballard*, 322 U.S. 78, 86 (1944). While the freedom of belief is absolute, the manner in which one acts on one's beliefs is not and may be subjected to neutral state regulations. 322 U.S. at 86. A

---

[2] We are told that the church in question, built in the mid-Nineteenth Century, does have historical value. Thus, the commission would use strict judgment when reviewing the church's plans for the addition.

[3] Despite the variant wording of the Maryland guarantee, the analysis of claims under it appears to be no different than of claims under the Free Exercise Clause. *See, e.g., McMillan v. State*, 258 Md. 147, 265 A.2d 453 (1970); *Snyder v. Holy Cross Hosp.,* 30 Md. App. 317, 352 A.2d 334 (1976).

statute violates the free exercise of religion when "individuals [are] coerced ... into violating their religious beliefs" or when the statute "penalizes religious activity by denying any person an equal share of the rights, benefits, and privileges enjoyed by others." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 448 (1988).

Courts have observed that "'[i]nterpretation and application of the free exercise clause has created, within that field of constitutional doctrine, areas dotted by unanswered questions.'" *Messiah Baptist Church v. City of Jefferson*, 859 F.2d 820, 824 (10th Cir. 1988), *cert. denied*, 490 U.S. 1005 (1989) (quoting *Grosz v. City of Miami Beach*, 721 F.2d 729, 733 (11th Cir. 1983)). Historic district zoning as applied to religious institutions is one of those areas.

### B. Standards for Assessing Free Exercise Claim

In a recent opinion, we described the turbulent history of the test for determining the legality of a government burden on religiously motivated practice. 79 *Opinions of the Attorney General* 45 (1994).

The current test that must be used for assessing Free Exercise Clause claims is set out in the Religious Freedom Restoration Act of 1993 (the "RFRA"). The RFRA reflects a congressional decision to return the jurisprudence of the Free Exercise Clause to what it had been prior to the Supreme Court's decision in *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990).[4]

The core provision of the RFRA is as follows:

---

[4] In *Smith,* a case involving the sacramental use of peyote, the Supreme Court abandoned its longstanding use of the "compelling interest" test when evaluating religiously neutral laws of general applicability that have the effect of burdening religious practice. 494 U.S. at 889. Instead, the Court concluded that "the sounder approach ... is to hold the test inapplicable" to challenges to "generally applicable prohibitions of socially harmful conduct ...." 494 U.S. at 885. Justice O'Connor, in an opinion concurring with the Court's result but not its analysis, characterized this holding as one that "dramatically departs from well-settled First Amendment jurisprudence ... and is incompatible with our Nation's fundamental commitment to individual religious liberty." 494 U.S. at 891.

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person —

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling interest.

42 U.S.C. §2000bb-1(b). The RFRA is intended to "restore the compelling interest test ... to guarantee its application in *all* cases where free exercise of religion is *substantially* burdened...." 42 U.S.C. §2000bb(b)(1) (emphasis added, citations omitted). The RFRA is applicable retroactively to both state and federal law. 42 U.S.C. §2000bb-1(6).

The legislative history of the RFRA expresses the intent that "courts will look to free exercise cases decided prior to *Smith* for guidance in determining whether the exercise of religion has been substantially burdened and the least restrictive means have been employed in furthering a compelling government interest." S. Rep. No. 103-111, 103d Cong., 1st Sess. 8-9 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1898. The legislative history does make it clear, however, that "only governmental actions that place a *substantial* burden on the exercise of religion must meet the compelling interest test" and the act "would not require such a justification for every government action that may have some effect on religious institutions." *Id*. (emphasis added).

**IV**

**Threshold Elements of a Free Exercise Claim**

*A.    Neutrality and General Applicability*

"'A proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue a course of "neutrality" toward religion, favoring neither one religion over others nor religious adherents collectively over nonadherents.'" *Board of Ed. of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687, 696 (1994) (quoting *Committee for Public Ed. & Religious Liberty v. Nyquist*, 413 U.S. 756, 792-93 (1973)).

The historic zoning ordinance in this case and historic zoning in general easily pass this threshold test. The requirements of historic zoning apply equally to all structures within a district and do not treat secular structures and property owners any differently than religious buildings and institutions.

*B.    Religious Basis of Objection*

The party objecting on religious grounds to a state or local regulation must demonstrate that the objection is grounded upon a sincerely held religious belief. *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972). Indeed, only beliefs rooted in religion are protected by the Free Exercise Clause. *Thomas v. Review Board of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981). Secular, philosophical, and personal choices and beliefs do not come within its protection. *Yoder*, 406 U.S. at 216.

The Supreme Court has acknowledged that determining a religious belief or practice is a "most delicate question" but realized that "allowing every person to makes his own standards on matters of conduct in which society as a whole has important interests" would be contrary to the very concept of ordered liberty. *Yoder,* 406 U.S. at 215-16. Furthermore, some practices might be "so clearly nonreligious in motivation, as not to be entitled to protection." *Thomas*, 450 U.S. at 715.

As stated earlier, religious observances in the form of beliefs are absolutely protected by the Free Exercise Clause. *Cantwell*, 310 U.S. at 303-04. Practices or conduct, by contrast, merit protection only when they flow from a religious belief and are integrally related to those underlying religious beliefs. Indeed, "no weight measures on the side of religion unless it can be shown that the government action ultimately affects religious practice." *Grosz v. City of Miami Beach,* 712 F.2d 729, 736 (1983), *cert. denied*, 469 U.S. 827 (1984). Thus, the centrality of the religious observance or practice to the believer's faith influences the determination of a First Amendment infringement.

The Supreme Court has determined on many occasions whether certain conduct was integrally related to an individual's religious beliefs. In *Wisconsin v. Yoder,* the Court found that refusal of the Amish to send their children to school beyond the eighth grade, in defiance of a state compulsory education law, was based on a "fundamental tenet" of their faith. *Yoder*, 406 U.S. at 218. A Sabbatarian who would not work on Saturday was, in the Supreme Court's view, following a "cardinal principle" of her religion. *Sherbert v. Verner*, 374 U.S. 398, 406 (1963). The Court concluded that a Jehovah's Witness who refused to work on weapons did so because of "religious convictions." *Thomas*, 450 U.S. at 715, 716. *See also Syska v. Montgomery County Bd. of Ed.*, 45 Md. App. 626, 632, 415 A.2d 301, *cert. denied*, 288 Md. 744 (1980), *appeal dismissed*, 450 U.S. 961 (1981) (objections to compulsory immunization, based on purely secular considerations, "are philosophical and personal rather than religious [and] do not rise to the demands of the Religion Clauses"). *Cf.* 79 *Opinions of the Attorney General* at 47-48 (assuming without discussion that an individual who objected to a photo license did so because of sincerely held religious beliefs).[5]

---

[5] One commentator has argued that a governmental effort to sort out the relationship between design elements in a church and religious belief would amount to state entanglement in religious affairs and so would violate the Establishment Clause of the First Amendment: "There are no neutral principles by which design control authorities can separate the secular from the religious ...." Angela C. Carmella, *Houses of Worship and Religious Liberty: Constitutional Limits to Landmark Preservation and Architectural Review*, 36 Vill.L.Rev. 401, 483-84 (1991). This argument is inconsistent with the cases cited in the text above, however,

(continued...)

Not every change that a religious organization wishes to make to the exterior of a house of worship reflects a sincerely held religious belief. In fact, many exterior changes bear no apparent relation to religious belief. For example, suppose that a church needs new gutters and would prefer to replace its old copper gutters with much cheaper aluminum ones. It is difficult to see how this choice could be presented with any sincerity as grounded in the dogma or religious practice of the church.

Without attempting in the abstract to catalog these secular elements of a church's exterior, we do conclude that some changes to the exterior of a church, especially the ones that are the result of routine maintenance, are no different than the alterations that any property owner in a historic district would make to a structure and that would require the approval of the historic zoning commission. As stated earlier, secular choices of a religious institution do not rise to the level of First Amendment protection. *Yoder*, 406 U.S. at 216. Therefore, changes of this nature are subject to the approval of the historic zoning commission.[6]

We also recognize, of course, that some exterior design elements are indeed the architectural expression of religious belief. For example:

---

[5] (...continued)
which engage in precisely the task of "separat[ing] the secular from the religious ...." As the Supreme Court has observed, "The Establishment Clause does not exempt religious organizations from such secular government activity as fire inspections and building and zoning regulations ...." *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 305 (1985).

[6] Several U.S. Circuit Courts of Appeal have used this type of analysis to determine whether zoning restrictions actually burdened a church's religious beliefs or only affected secular decisions of the congregation. *See Christian Gospel Church v. San Francisco*, 896 F.2d 1221 (9th Cir.) *cert. denied*, 498 U.S. 999 (1990) (congregation did not demonstrate that worship in a particular home was essential to religious beliefs); *Messiah Baptist Church v. County of Jefferson*, 859 F.2d 820, 825 (10th Cir. 1988), *cert. denied*, 490 U.S. 1005 (1989) (building a church on a particular site was not a religious tenet of the congregation); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood*, 699 F.2d 303, 307 (6th Cir.), *cert. denied*, 464 U.S. 815 (1983) (building and owning a church is a desirable accessory of worship, not a fundamental tenet of church's religious beliefs).

> Decisions to use clear windows as opposed to stained glass, or representational stained glass as opposed to nonrepresentational design, are rooted in theological choice, and clearly affect the worship environment. Nor is there doubt that an aesthetic feature as basic as building configuration — square, round, or rectangular — is inextricably connected to liturgical experience and ecclesial identity.

Angela C. Carmella, *Houses of Worship and Religious Liberty: Constitutional Limits to Landmark Preservation and Architectural Review*, 36 Vill. L. Rev. 401, 485 n. 319. If the architectural decision flows from religious belief, it is within the scope of First Amendment protection.

We acknowledge that determining whether proposed exterior changes are the result of religious beliefs and practices can be "a difficult and delicate task." *Thomas,* 450 U.S. at 714. Indeed, a local historic zoning commission is not free to reject the beliefs held by the applicant church because the commission considers them incomprehensible, illogical, or inconsistent. The task of the commission is to decide whether the beliefs held by the applicant are sincerely held and whether they are, in the church's own scheme of things, religious in character. *United States v. Seger*, 380 U.S. 163, 184-85 (1965). To that end, the commission is entitled to ask for an explanation of the religious basis of design elements, if the significance is not readily apparent.[7] *See also Frazee v. Illinois Department of Employment Security*, 489 U.S. 829, 833 (1989) ("[s]tates are clearly entitled to assure themselves that there is ample predicate for invoking the free exercise clause"). However, the claim of the religious institution that the design change is an "essential part of a religious faith must be given great weight." *Seger,* 380 U.S. at 184. The commission cannot inquire into the truth or falsity of the belief. *See United States v. Ballard,* 322 U.S. 78, 86 (1944); *United States v. Ward*, 989 F.2d 1015 (9th Cir. 1992). *Cf. American Union of Baptists v. Trustees of the Particular*

---

[7] The underlying religious import of some design elements is self-evident — a cross on the facade of a church, for example, or a minaret on a mosque. Other design elements — the choice of paint color on a church door, for instance — might or might not have religious significance, depending on the beliefs of the church.

*Primitive Baptist Church at Black Rock, Inc.,* 335 Md. 564, 575-76 (1994) (court may adjudicate church property disputes based on secular considerations but not "theological or doctrinal" matters).

In the Sykesville situation, the building of an addition might well be the result of a sincerely held religious belief or practice. Accommodating all people who wish to worship in the church may be required by religious doctrine. But there may be no doctrinal basis for some of the design elements in the addition. The historic zoning commission is entitled to an appropriate explanation.

In sum, our analysis on the threshold issue of whether an exterior change to a house of worship is the result of a sincerely held religious belief is essentially two-fold: (1) If the alteration, construction, repair, reconstruction, moving, or demolition of a house of worship reflects secular concerns, then the congregation is subject to the jurisdiction of the commission and must comply with the requirements that the commission establishes in order to receive approval of the congregation's application. (2) If the alteration stems from a sincerely held religious belief, the congregation must comply with the administrative procedures of the commission but may be constitutionally entitled to an exemption from requirements that would interfere with the planned alteration. See Parts IVC and V below.

## C.    *Substantial Burden*

The Supreme Court has held that "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Yoder*, 406 U.S. at 205. In one way or another, every neutral, broadly applicable government regulation incidentally burdens religious activity to some extent, but that fact does not immunize religious groups from all regulation. *Bowen v. Roy*, 476 U.S. 693 707 n. 17 (1986). In *Lyng v. Northwest Cemetery Protective Ass'n,* 485 U.S. 439, 450-51 (1988), the Supreme Court explained:

> It is true that ... indirect coercion or penalties on the free exercise of religion, not just outright prohibitions are subject to scrutiny under the First Amendment.... This does not and cannot imply that incidental effects of

> government programs, which make it more difficult to practice certain religions but have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions. The crucial word in the constitutional text is "prohibit"...

Accordingly, a burden becomes constitutionally significant only when it places a "*substantial* burden on the observation of a central religious belief or practice." *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989) (emphasis added).

We must ascertain, therefore, whether the church's burden of complying with the requirements of the historic zoning ordinance is "substantial." If not, no First Amendment infringement will have occurred.

### 1.   *Administrative Process*

As discussed in Part II above, Ordinance No. 187 requires a church located in the Sykesville historic district to seek the approval of the historic district commission before the construction, alteration, repair, reconstruction, moving, or demolition of any structure, including a change of wall or roof surfacing materials. Ordinance No. 187, §8. It is our understanding that the application is generally accompanied by a small fee. The commission either approves, rejects, or modifies the plans of an applicant by filing a certificate with the local zoning administrator. Ordinance No. 187, §15. If the plans are rejected, an applicant, including a church, would have to modify its plans, a process that may involve dialogue with the commission in order to ascertain what modifications would result in subsequent approval of the plans.

The Washington Supreme Court ruled that a similar process under Seattle's landmark preservation ordinance violated a church's free exercise rights. *First Covenant Church v. City of Seattle*, 787 P.2d 1352 (Wash.), *vacated*, 111 S.Ct. 1097 (1990).[8] The Seattle

---

[8] The Washington court's original Free Exercise Clause decision was vacated by the Supreme Court and remanded in light of *Employment Div., Dep't of Human, Resources v. Smith*. On remand, the Washington

(continued...)

landmark commission attempted to designate the church as a landmark because of its historical value. 787 P.2d at 1354. The church sought a declaratory judgment that the Seattle ordinance was unconstitutional, because it violated the church's rights of religious freedom. *Id*. The ordinance would have required the church to receive approval of the commission before making any alteration of the exterior of the church. The ordinance provided for automatic approval of exterior changes that were necessitated by changes in "liturgy," but it did require the church to discuss possible alternative design solutions that might have been appropriate to preserve the designated features of the landmark.

The Washington court found that the "practical effect of the provisions is to require a religious organization to seek secular approval of matters potentially affecting the church's practice of religion." 787 P.2d at 1359. Also, even if the proposed alteration were religious in nature, the church still had to submit its plans and negotiate possible alternatives. *Id*. The court concluded that these requirements created an "unjustified governmental interference in religious matters of the church and ... an infringement of the church's right of free exercise" and found that the ordinance was unconstitutional as applied to religious institutions. *Id*. In the court's view, requiring the church to obtain a certificate of approval from the commission created a substantial burden on the church's First Amendment rights that was not justified by a compelling interest. 787 P.2d at 1361.

The Washington Supreme Court's analysis is flawed, in our view. First, the burdens imposed by "paperwork" and other administrative costs and requirements associated with submitting proposed changes to a landmark commission (or, in Sykesville's case, a historic zoning commission) do not substantially burden free exercise rights. The Washington court did not take proper account of Supreme Court cases to the effect that complying with administrative procedures of the government do not burden a

---

[8] (...continued)

Supreme Court refused to follow the Supreme Court's analysis in *Smith* and decided the case on state constitutional grounds. *First Covenant Church v. Seattle*, 840 P.2d 174 (Wash. 1992). The court said that Washington's Free Exercise Clause was substantially broader than the Free Exercise Clause of the U.S. Constitution. The cases applying Article 36 of the Declaration of Rights, by contrast, suggest that it has the same scope as the federal guarantee. *See* note 3 above.

religious institution's First Amendment rights.  In *Jimmy Swaggart Ministries v. Board of Equalization*, 494 U.S. 378, 394-95 (1990), the Supreme Court held that the administrative and recordkeeping burdens of sales and use taxes "do not rise to a constitutionally significant level."  Furthermore, in *Tony & Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 305-06 (1989), the Court concluded that the recordkeeping and paperwork provisions of the Fair Labor Standards Act did not violate the free exercise rights of individuals associated with a religious institution.

If we were to conclude that the burden of complying with the administrative requirements of a historic zoning ordinance was "substantial," we would also have to presume that similar administrative requirements of other neutral regulatory schemes, like building codes, fire codes, and land use zoning, were "unduly burdensome" for the same reason.  These types of regulations also require religious institutions to submit applications to secular boards for approval.  Yet, both federal and state courts have repeatedly upheld the application of these requirements to religious institutions.  *See, e.g., Lakewood Ohio Congregation of Jehovah's Witnesses v. City of Lakewood*, 699 F.2d 303 (6th Cir. 1983) (residential zoning requirement); *Congregation Beth Yitzcok v. Town of Rampo*, 593 F. Supp. 655 (S.D.N.Y. 1984) (occupancy requirements); *Faith Assembly of God v. State Bldg. Code Comm'n*, 416 N.E.2d 288 (Mass. App. 1981) (building code regulations).

Second, the Washington court asserted that requiring a church to discuss its religious motivations for a change in the exterior of a church with a secular commission was a substantial burden on religion.  To our knowledge, no court had ever construed the Free Exercise Clause to render unconstitutional the obligation of one wishing to be exempt from a governmental requirement to establish the fact of religious motivation for conduct.  To the contrary, free exercise cases routinely require the person or religious institution seeking an exemption from neutral governmental regulations to make an initial showing that the conduct in question is grounded in religious belief.  For example, a conscientious objector had to demonstrate to the local draft board that his failure to register for the draft was the result of his religious convictions.  *United States v. Seeger*, 380 U.S. 163 (1965).  Similarly, Sabbatarians had to show an unemployment compensation board that a refusal to work on Saturday was the result of sincerely held religious beliefs.  *Sherbert*, 374 U.S. 398 (1963); *Hobbie v. Unemployment Appeals Comm'n,* 480 U.S. 136 (1987).

The Washington court noted that the Seattle ordinance had the "potential" of affecting the church's religious rights. The "potential" of affecting religious rights is not itself a substantial burden under Free Exercise Clause jurisprudence. The governmental action must in fact "coerce" an individual into violating his or her beliefs or "penalize" religious individuals. *Lyng*, 485 U.S. at 449. Since the church in Seattle never sought the approval of any plans for an alteration, no coercion or penalty in fact occurred.

Finally, the Washington court assumed that all alterations that a church might make to its exterior are religiously motivated, thereby extending First Amendment protection to potential alterations that a church might make for entirely secular reasons. This assumption is both contrary to fact and inconsistent with the Supreme Court cases that require a distinction between secular decisions and religious ones, because only religiously based conduct merits the protection of the First Amendment. *See* Part IVB above.

In conclusion, "[i]t is virtually self-evident that the Free Exercise Clause does not require an exemption from a governmental program unless, at a minimum, inclusion in the program actually burdens the claimant's freedom to exercise religious rights." *Alamo Foundation*, 471 U.S. at 303. The administrative procedures of the Sykesville Historic Zoning Ordinance do not themselves create a substantial burden on the church. Thus, the church is not entitled to a broad exemption from the requirements of the ordinance.

### 2.      *Financial Considerations*

The church in Sykesville is apparently concerned that the historic zoning commission will require the church to spend extra money on the addition, money that the church believes could be better spent on the religious functions of the church. In essence, the church is suggesting that this potential incremental cost is a "substantial" burden on its free exercise rights.

Being located in a historic zoning district *might* result in a property owner's having to spend more money on alterations to a

structure's exterior than if the structure were located elsewhere.[9] The commission might require the owner to use more expensive materials, or it might require the owner to make additional, more costly alterations. Since the historic zoning commission has never reviewed the plans for the addition to the church in Sykesville, we do not know whether complying with commission requirements will actually require the church to spend more money on the addition. For the purposes of this section of the opinion, then, we shall simply assume that compliance with the Commission's requirements would increase the cost of the addition.

The Supreme Court recently considered whether neutral regulations that diminish the income of a church and consequently reduce the resources that could be spent on religious uses infringes on the First Amendment. In *Jimmy Swaggart Ministries v. Board of Equalization*, the religious organization argued that the imposition of a tax on the sale of its religious materials amounted to an unconstitutional burden, because the tax reduced the income of the organization. The Supreme Court flatly rejected this argument: "[T]o the extent that imposition of a generally applicable tax merely decreases the amount of money [that Jimmy Swaggart Ministries] has to spend on its religious activities, any such burden is not constitutionally significant." 493 U.S. at 391 (citations omitted).

*Swaggert* is consistent with earlier cases on the monetary impact of neutral regulation. In *Hernandez v. Commissioner*, 490 U.S. 680, 698 (1989), a religious organization argued that the disallowance of a tax deduction for its practice of "auditing" reduced the amount of income its members could spend on their religious activities. The Supreme Court, pointing out that "[t]his argument knows no limitation," rejected it. 490 U.S. at 700. The Supreme Court had earlier recognized that this argument, asserting that an indirect financial burden violates the Free Exercise Clause, "would radically restrict the operating latitude of the legislature." *Braunfeld v. Brown*, 366 U.S. 599, 606 (1961) (rejecting argument that Sunday closing law interfered with free exercise rights of Orthodox Jewish merchants). The Court noted that if this type of argument were accepted, statutes could be struck down merely because they tax

_____

[9] We emphasize the word "might" because we have no way of knowing if compliance with historic zoning requirements would actually increase costs in every instance. Sometimes compliance – as to choice of paint color, for instance – would involve no extra expense.

income that limits the amount of money that could be contributed to religious organizations, thereby imposing an indirect burden on the individual who is required by religious conviction to donate a greater amount to the church. *Id.* According to the Court, the "list of legislation of the nature is nearly limitless." *Id.*

This line of cases has been applied to a historic landmark ordinance. In *St. Bartholomew's Church v. City of New York*, 914 F.2d 348, 355 (2d Cir. 1990), *cert. denied*, 499 U.S. 905 (1991), New York's landmarks law prevented a church from commercial development of a site on which a church-owned historic structure stood. The court accepted that the law "has drastically restricted the church's ability to raise revenues to carry out its various charitable and ministerial programs." 914 F.2d at 355. Nevertheless, the court rejected the argument that these opportunity costs were a burden cognizable under the Free Exercise Clause, because "we understand Supreme Court decisions to indicate that neutral regulations that diminish the income of a religious organization do not implicate the Free Exercise Clause." *Id.*[10]

### 3. *Prohibition of religiously based exterior change.*

The clearest example in this context of a governmental action that *would* substantially burden religious practice is a flat ban. *See Goldman v. Weinberger*, 475 U.S. 503 (1986) (implicitly recognizing burden caused by prohibition on the wearing of a yarmulke by Jewish military officer).

Suppose, for example, that a church purchases a structure in a historic district formerly used as a synagogue and wants to replace a Star of David on the facade with a cross. This design change obviously would be grounded in religious belief. A decision by a historic zoning commission to disapprove the application would substantially burden the church's free exercise of religion.

---

[10] If "maintenance of the landmark either physically or financially prevents or seriously interferes with carrying out the [religious] purpose ...," the result might well be different. *Church of St. Paul and St. Andrew v. Barwick*, 496 N.E.2d 183, 192 n.6 (N.Y.), *cert. denied*, 479 U.S. 985 (1986).

If a substantial burden exists, the governmental restriction can be applied only if it furthers a "compelling governmental interest." 42 U.S.C. §2000bb-1(b)(1).  To that issue we now turn.[11]

# V

## Weight of Governmental Interest

"To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance interests of the highest order ....  The compelling interest standard ... really means what it says." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 113 S.Ct. 2217, 2233 (1993) (internal quotation marks and citations omitted).  An impediment to religious activity is unconstitutional, wrote the Fourth Circuit, unless it is justified "by a compelling state interest arising from some substantial threat to public health, safety, peace, or order ...." *Forest Hills Early Learning Center, Inc. v. Lukhard*, 728 F.2d 230, 241 (4th Cir. 1984).[12]

The interests underlying historic zoning ordinances, while very significant, are not of comparable importance.  In a case upholding the constitutionality of the New York City Landmarks Law (but not involving a Free Exercise Clause issue), the Supreme Court wrote of "a widely shared belief that structures with special historic, cultural, or architectural significance enhance the quality of life for all." *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 108 (1978). Moreover, the preservation of the character of a historic district, like Sykesville's, undoubtedly contributes to tourism and the economic well-being of the community generally.

---

[11] The RFRA also applies a "least restrictive means" test.  42 U.S.C. §2000bb-1(b)(2).  In light of our conclusion in Part V that historic zoning does not serve a "compelling interest," we need not analyze this additional test.

[12] The legislative history of the RFRA indicates that the governmental interest in some land use regulations, "such as fire codes," is compelling.  S. Rep. No. 103-111, at 9 n.18, 1993 U.S.C.C.A.N. at 1899.

Nevertheless, neither the Supreme Court decision in *Penn Central* nor any other case upholding a historic district law or landmarks law suggests that the governmental interests underlying such laws are "compelling." Indeed, even the foremost national advocate for such laws, the National Trust for Historic Preservation, merely suggested in an amicus brief in *First Covenant Church* that landmark designation laws serve "an important public purpose" — undoubtedly true, but falling short of a "compelling interest." Amicus Curiae Brief of the National Trust for Historic Preservation at 7, *City of Seattle v. First Covenant Church*, 111 S.Ct. 1097 (No. 90-892) (1991).

While there is no denying the importance of historic district zoning, in our view the governmental interest at stake falls short of meeting the rigorous "compelling interest" standard. Hence, we conclude that an ordinance may not be applied to prevent a church or other house of worship from incorporating in the exterior facade of its structure design elements that reflect the congregation's religious beliefs or that are an inevitable by-product of religious activities within the structure.[13]

## VI

### Conclusion

In summary, our opinion is as follows: A church in a historic district is subject to the procedural requirements of the local historic zoning ordinance — that is, the church must submit plans for exterior changes to its building to the local historic zoning commission. If the church does *not* assert that the components of the proposed change are grounded in religious belief or practice, then the church is subject to the substantive requirements of the ordinance, including the need for commission approval. If the church *does* reasonably

---

[13] In light of this conclusion, we need not consider whether the Free Speech Clause of the First Amendment would prevent a historic zoning commission from disapproving a design element that communicates a religious message. *See Lamb's Chapel v. Center Moriches Union Free School Dist.*, 113 S.Ct. 2141 (1993). *See generally* Thomas Pak, Comment, *Free Exercise, Free Expression, and Landmark Preservation*, 91 Colum. L.Rev. 1813 (1991).

assert that any components of the proposed change are grounded in religious belief or practice, then the commission may neither question the religious basis of the design choice nor disapprove it.


J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz*
*Chief Counsel*
  *Opinions & Advice*


*Amanda Stakem Conn, a volunteer intern in the Opinions Division, contributed substantially to the preparation of this opinion.


***Editor's Note:***
      In *City of Boerne v. Flores*, 117 S.Ct. 2157 (1997), the Supreme Court held that the Religious Freedom Restoration Act was unconstitutional, at least in its application to state and local governments.